## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ALICIA GAYLE ENRIGHT | ) | Case No. 06-10747 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

---

### MEMORANDUM OPINION

This matter came on for hearing on November 30, 2006, on the Trustee's Objection to Confirmation of Plan and Recommendation Against Confirmation of Plan, filed by Anita Jo Kinlaw Troxler, the duly-appointed Chapter 13 trustee herein (the "Trustee"). Jeffrey P. Farran appeared on behalf of the above-referenced debtor (the "Debtor"), and Jennifer R. Harris appeared on behalf of the Trustee.

On June 30, 2006, the Debtor filed for Chapter 13 relief. On August 14, 2006, a Notice and Proposed Order of Confirmation was filed, and on August 29, 2006, the Trustee filed her Objection. The Trustee argues that the Debtor's proposed plan should not be confirmed because Section 707(b)(2)(A)(ii)(I) does not allow, as part of the disposable income calculation, a debtor to take the Local Standard expense deduction for transportation ownership expense related to a vehicle for which there is no lien or lease. The Debtor argues that the plain language of Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code dictates that the Debtor be permitted to deduct the car ownership expense even if the Debtor does not make a monthly car payment.

Based upon a review of the briefs submitted by counsel, the arguments of counsel at the hearing, and a review of the entire official file, the Court concludes that a Chapter 13 debtor who

1

owns a car free of any liens or leases can claim the ownership allowance under the IRS Local

Standard for transportation as a monthly expense for the purpose of computing disposable

income under Section 1325(b)(2) of the Bankruptcy Code.

## I. FACTS

Along with her petition, the Debtor filed a Statement of Current Monthly Income and

Calculation of Commitment Period ("Form B22C") for purposes of  determining her current

monthly income, applicable commitment period, and disposable income.  The Form B22C shows

that the Debtor's annual current monthly income exceeds the applicable median family income

for one person in the household, and it shows that her monthly disposable income is negative

$244.00, after crediting all deductions allowed under Section 707(b)(2)(A) and (B).  Included in

the expenses that the Debtor used to calculate her monthly disposable income is a deduction on

line 28 for the Local Standards transportation ownership/lease expense.  The Debtor's proposed

plan provides for a monthly payment of $110.00 per month for sixty months, which would

provide a 9 percent return to allowed unsecured claims.

The Trustee argues that the Debtor took an impermissible deduction on line 28 of Form

B22C for a vehicle for which the Debtor has no secured debt or lease payment.[1]  On line 28 of

Form B22C, the Debtor deducted an ownership cost of $471.00 for a 2000 Ford Mustang (the

"Vehicle"), which has no lien against it.  The Trustee argues that the monthly disposable income

would be at least $277.00 if such deduction were disallowed.  The Trustee believes that this

would allow for a plan payment of $290.00 per month for sixty (60) months and a 33% return to

---

[1] The Trustee initially objected to the plan on the additional ground of feasibility, but she
no longer objects on that ground because the Debtor was able to increase her monthly net income
by discontinuing a 401(k) contribution, thereby increasing her take home pay.

2

general unsecured creditors.

## II. ANALYSIS

In calculating disposable income under Section 1325(b), the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("BAPCPA") distinguishes between debtors

whose income falls above or below the median family income for similarly-sized households.

11 U.S.C. § 1325(b); In re Barr, 341 B.R. 181, 185  (Bankr. M.D.N.C. 2006).  To determine a

disposable income figure, Section 1325(b)(3) requires "amounts reasonably necessary to be

expended" under Section 1325(b)(2) to be determined in accordance with Section 707(b)(2)(A)

and (B), and those amounts have been incorporated into Form B22C.  11 U.S.C. § 1325(b)(3); In

re Girodes, 350 B.R. 31, 37 (Bankr. M.D.N.C. 2006).  Thus, an above-median debtor calculates

her expenses and deductions, pursuant to Section 707(b)(2)(A) and (B), using Form B22C.  The

issue before the Court concerns Section 707(b)(2)(A)(ii)(I), which provides, in part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense
> amounts specified under the National Standards and Local Standards, and the
> debtor's actual monthly expenses for the categories specified as Other Necessary
> Expenses issued by the Internal Revenue Service for the area in which the debtor
> resides, as in effect on the date of the order for relief[.]

11 U.S.C. § 707(b)(2)(A)(ii)(I).

The National Standards and Local Standards are "the Collection of Financial Standards

used by the Internal Revenue Service (the 'IRS') to determine a taxpayer's ability to pay a

delinquent tax liability."  In re Fowler, 349 B.R. 414, 416 (Bankr. D. Del. 2006).  The National

Standards set forth amounts for five categories of expenses: (1) food, (2) housekeeping supplies,

(3) apparel and services, (4) personal care products and services, and (5) miscellaneous.  Internal

Revenue Manual, § 5.15.1.8 (May 1, 2004).  The Local Standards set forth amounts for housing

and transportation expenses.  Id. at § 5.15.1.9.  The transportation expenses are divided into two

categories, operating allowance and ownership allowance for up to two vehicles.  Id. at

§ 5.15.1.7.

       In this case, the Debtor took the ownership allowance for a vehicle that is owned free of

any liens or leases.  The Trustee asserts that to claim the ownership allowance, the Debtor must

be making a loan or lease payment on the vehicle.  The Debtor asserts that the plain language of

Section 707(b)(2)(A)(ii)(I) provides that she can take the ownership allowance if she owns a

vehicle, irrespective of whether or not the vehicle is owned free of any liens.  A number of courts

have considered this issue, and there is a split of authority.  On one side are the courts that deny

the use of the ownership allowance where the debtor owns a vehicle free and clear of liens.  See

In re Slusher, No. BK-S-06-10435-BAM, 2007 WL 118009, at *14 (Bankr. D. Nev. Jan. 17,

2007); In re Devilliers, No. 06-10415, 2007 WL 92504, at *14 (Bankr. E.D. La. Jan. 9, 2007); In

re Harris, 353 B.R. 304, 309-10 (Bankr. E.D. Okla. 2006); In re Oliver, 350 B.R. 294, 301

(Bankr. W.D. Tex. 2006); In re Carlin, 348 B.R. 795, 797 (Bankr. D. Or. 2006); In re Wiggs, No.

06-B-70203, 2006 WL 2246432, at *3 (Bankr. N.D. Ill. Aug. 4, 2006); In re Lara, 347 B.R. 198,

201 (Bankr. N.D. Tex. 2006); In re Barraza, 346 B.R. 724, 727-29 (Bankr. N.D. Tex. 2006); In re

McGuire, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006); In re Hardacre, 338 B.R. 718, 728 (Bankr.

N.D. Tex. 2006).  On the other side are the courts that permit a debtor who owns a vehicle free of

liens to take the ownership allowance.  See In re Sorrell, — B.R. —, 2007 WL 211276, at *17

(Bankr. S.D. Ohio Jan 26, 2007); In re Zak, — B.R. —, 2007 WL 143065 at *7 (Bankr. M.D.

Ohio Jan. 12, 2007); In re Crews, No. 06-10422C-13G, 2006 WL 3782865, at *1 (Bankr.

M.D.N.C. Dec. 22. 2006); In re Wilson, 356 B.R. 114, 119 (Bankr. D. Del. 2006); In re Haley,

354 B.R. 340, 344 (Bankr. D.N.H. 2006); In re Prince, No. 06-10328C-7G, 2006 WL 3501281, at *4 (Bankr. M.D.N.C. Nov. 30, 2006); In re Grunert, 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006); In re Hartwick, 352 B.R. 867, 868-69 (Bankr. D. Minn. 2006); In re Fowler, 349 B.R. at 419; In re Demonica, 345 B.R. 895, 905 (Bankr. N.D. Ill. 2006); see also In re Farrar-Johnson, 353 B.R. 224, 230-31 (Bankr. N.D. Ill. 2006)(using the same reasoning that would apply to the ownership allowance, the court held that a debtor may take the housing allowance under the Local Standards even if the debtor does not incur a rent or mortgage expense).

A.  Cases Denying the Ownership Allowance for Vehicles Owned Free of Liens

  1.  Internal Revenue Publications

In the landmark decision on this issue, Judge Nelms looked to the Internal Revenue Manual (the "IRM") and the Collection Financial Standards to aid in the interpretation of Section 707(b)(2)(A)(ii)(I). In re Hardacre, 338 B.R. at 726. The court reasoned that "[b]ecause the Local Standards are issued by the Internal Revenue Service, it is instructive to refer to publications of that organization for guidance as to the types of 'debt payments' that can reduce allowances under the Local Standards." Id. at 726. With respect to the Local Standard amounts, the Collection Financial Standards state that "[t]he ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense." Id. at 728 (quoting Collection Financial Standards, www.irs.gov/individuals/article/0,,id=96543, 00.html). The court then held that "[b]ecause the Local Standards only provide for a deduction for automobiles that are subject to lease or purchase, they do not permit a debtor to claim an ownership deduction for a vehicle owned free and clear by the debtor." Id. at 728.

Other courts agreed with the reasoning in <u>Hardacre</u> and also used IRS publications for guidance.  <u>See</u> <u>In re Oliver</u>, 350 B.R. at 301; <u>In re Carlin</u>, 348 B.R. at 798; <u>In re McGuire</u>, 342 B.R. at 612.  In <u>McGuire</u>, the court relied on the IRM, which provides that "'if a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense,' but 'if a taxpayer has no car payment, only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.'"  <u>Id</u>. at 613. (quoting IRM, Financial Analysis Handbook § 5.15.1.7(4)(b)).  Based on the IRM language and <u>Hardacre</u>, the court held that the debtors could not take the ownership allowance because their vehicle was owned free of liens.  <u>Id</u>. at 613-14.

2.  Plain Language

In addition to using the IRS publications for guidance, courts have interpreted the plain language of the statute as prohibiting the use of the ownership allowance when the debtor owns a vehicle free of liens.  In <u>Wiggs</u>, the court found it unnecessary to look to the IRM for guidance, and instead looked at the language of Section 707(b)(2)(A)(ii)(I).  <u>In re Wiggs</u>, 2006 WL 2246432 at *2.  The court determined that "the language of the statute is clear and unambiguous."  <u>Id</u>.  It found that "the term 'applicable' modifies the amounts specified to limit the expenses to only those that apply."  <u>Id</u>.  The court went on to point out that by interpreting the statute as allowing every debtor to claim the full ownership amount would make the term "applicable" "superfluous."  <u>Id</u>.  Therefore, the court held that the debtor was not allowed to take the ownership allowance when the debtor did not have a vehicle payment.  <u>Id</u>. at 3.  Other courts profess to base their opinions on the plain language of the statute, but they do so by looking to

the IRS publications for guidance.  See In re Harris, 2006 WL 293389, at *3; In re Carlin, 348

B.R. at 797-98; In re McGuire, 342 B.R. at 613.

B.  Cases Allowing the Ownership Allowance When the Vehicle is Free of Liens

      Other courts have rejected the use of IRS publications for guidance.  Instead, they have

based their opinions largely on the plain language of the statute and the relevant legislative

history.

      1.  Plain Language

      In Farrar-Johnson, the court considered the plain language of the statute, specifically

looking at the use of the term "applicable."  In re Farrar-Johnson, 353 B.R. at 230-31.  The court

found that the term read in isolation was ambiguous and means simply "can be applied;

appropriate."  Id. at 230.  However, the court noted that statutory terms should never be read in

isolation, but instead must be "read in the context in which they appear."  Id.  When the court

looked at "applicable" within the context of Section 707(b)(2)(A)(ii)(I), it found that "Congress

drew a distinction in the statute between 'applicable' expenses on the one hand and 'actual'

expenses on the other."  Id.  Therefore, expenses under the Local Standards only need to be

applicable to the debtor, "because of where he lives and how large his household is.  It makes no

difference whether he 'actually' has them."  Id. at 231.  The court in Hartwick echoed this plain

language interpretation in its determination that a straightforward reading of the statute provides

that the debtor's ownership allowance is the higher of the debtor's actual expenses or the

Standard amounts.  In re Hartwick, 352 B.R at 869.  The court found that the reading does not

change when the debtor's actual vehicle payment is zero.  Id.  Other courts have also found that

the plain language of the statute is unambiguous and reached the same result.  In re Wilson, 356

B.R. at 119-21; In re Prince, 2006 WL 3501281, at *2; In re Grunert, 353 B.R. at 594; In re Fowler, 349 B.R. at 419.

2.  Legislative History

Although the Fowler court based its holding on the plain language of Section 707(b)(2)(A)(ii)(I), it also found support for its decision in the legislative history.  In re Fowler, 349 B.R. at 419.  The court noted that in a prior version of BAPCPA that was never passed Congress defined "projected monthly net income" to require the following calculation of expenses:

> (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor . . . in the area in which the debtor resides as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order for relief.

Id. at 419 (quoting H.R. 3150, 105th Congress (1998)). The language referring to the IRS financial analysis was changed to the current language of Section 707(b)(2)(A)(ii)(I), which simply provides that the debtor can take the "applicable monthly expense amounts specified under the National and Local Standards."  Id. at 419.  The court concluded that this change from the prior version requiring the use of the IRS financial analysis to the current version merely referring to the monthly expense amounts "evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusions that it should look only to the amounts set forth in the Local Standards."  Id.

3.  Why Using the IRM Is Inappropriate

In addition to the plain language of the statute and the legislative history, several courts have addressed why the use of the IRM is inappropriate to interpret the means test.  The National

Standards and Local Standards provide amounts that are used by the IRS to determine a taxpayer's ability to pay delinquent taxes.  In re Fowler, 349 B.R. at 416.  These amounts are caps, to which taxpayers are allowed the lesser of the Standard amount or the actual expense.  In re Prince, 2006 WL 3501281, at *3; In re Hartwick, 352 B.R. at 869; In re Fowler, 349 B.R. at 417.  However, in bankruptcy the debtor is allowed the amount specified in the Local Standards for that category or the amount that the debtor actually incurred, whichever is higher.  In re Prince, 2006 WL 3501281, at *3; In re Hartwick, 352 B.R. at 869; In re Fowler, 349 B.R. at 417.  In his article, Judge Wedoff also looked at the inappropriate use of the IRM in determining the ownership expense amount.  He stated that since the IRM treats the Local Standards as caps, it follows logically that,

> if a taxpayer has no car payments, the taxpayer obviously cannot claim a Local Standard amount intended to cap actual car payment expenses.  However, since the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes  payments.

Eugene R. Wedoff, Means Testing in the New Word, 79 Am. Bankr. L.J. 231, 256-67 (Spring 2006).  Therefore, it makes little sense to look to the analysis provided in the IRM, because that publication uses the Standard amounts for a completely different purpose than the purpose for which Congress intended them to be used under BAPCPA.

C.  The Case Before the Court

  While there are strong arguments on both sides of this issue, this Court holds that allowing the Debtor to take the ownership allowance on her vehicle, which is owned free of liens, is the correct interpretation.  In reaching this conclusion, the Court rests its holding on the

plain language of Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code.

In discerning congressional intent, courts must start by looking to the plain language of the statute.  Lamie v. United States Tr., 540 U.S. 526, 533 (2004).  "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Connecticut National Bank v. Germain, 503 U.S. 249, 253-54 (1992).  Therefore, if the terms of the statute are unambiguous, the "judicial inquiry is complete," and the court's job is simply to enforce those terms.  Id.

Section 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards[.]"  11 U.S.C. § 707(b)(2)(A)(ii)(I).  If the Court was to look at the term "applicable" in isolation, it would concede that the statute could be viewed as ambiguous.  However, the Court must look at the statute as a whole and not merely as individual isolated phrases.  United States v. Morton, 467 U.S. 822, 828 (1984).  Therefore, the Court must consider the next phrase in that section where the term "actual" refers to "Other Necessary Expenses."  11 U.S.C. § 707(b)(2)(A)(ii)(I).  Since the terms "applicable" and "actual" are used in the same sentence with each modifying a different type of expense, it would make little sense to interpret them as meaning the same thing.  Instead, a more logical explanation is that Congress used two different terms to achieve two different results.  See In re Farrar-Johnson, 353 B.R. at 230-31; In re Fowler, 349 B.R. at 418.

If the two terms do not mean the same thing, and "actual" means the expenses the debtor incurred, then "applicable" must refer to something different.  One definition of "applicable" is, "applying or capable of being applied; relevant; appropriate."  THE RANDOM HOUSE COLLEGE

DICTIONARY 65 ( rev. ed. 1980).  This definition makes sense in the context of Section

707(b)(2)(A)(ii)(I), because except for the ownership allowance, the other amounts listed in the

National Standards and Local Standards are contingent on where the debtor lives.  U.S. Trustee

Program, Means Testing, available at http://www.usdoj.gov/ust/eo/bapcpa/20061001/

meanstesting.htm (last visited Feb. 1, 2007).  By referring to the "applicable monthly expense

amounts under the National Standards and Local Standards," Congress was directing debtors to

the amounts specific to the area in which they live. Congress used "applicable" to refer to

geographical area of the debtor and "actual" to refer to "Other Necessary Expenses" that the

debtor in fact incurred.  This interpretation of "applicable" is consistent with the plain language

of the statute.  Therefore, a plain reading of "applicable monthly expense amounts" in Section

707(b)(2)(A)(ii)(I) refers to the expense amounts under the National Standards and Local

Standards for the geographical area in which the debtor lives.

This same analysis was used in Demonica, Fowler, Farrar-Johnson, and Haley, and by

other courts, to reach the same conclusion.  Additionally, Judge Wedoff addressed the issue of

allowances in his article and found that:

> a plain reading of the statute would allow a deduction of the amounts listed in the
> Local Standards even where the debtor's actual expenses are less.  Thus, as with
> the allowances of the National Standards, even if the debtor's transportation and
> housing needs were actually satisfied without cost to the debtor,
> 707(b)(2)(A)(ii)(I) would allow the debtor a deduction in the amounts specified in
> the IRM's Local Standards.

Eugene R. Wedoff, Means Testing in the New Word, 79 Am. Bankr. L.J. 231, 255 (Spring 2006)

(footnotes omitted).

Although the Court finds that the plain language of the statute is clear, even if it was

ambiguous, the result would not change.  Where a statute is ambiguous, a court may look to the legislative history for guidance in order to determine Congress' intent.  United States v. Irvin, 2 F.3d 72, 76 (4th Cir. 1993), cert. denied, 510 U.S. 1125 (1994).  BAPCPA went through many versions prior to being enacted.  One of those versions specifically referred to the IRS financial analysis in determining projected monthly net income.  It provided that:

> (3)  Projected monthly net income means current monthly total income less–
> (A) the expense allowances under the applicable National Standards, Local Standards and Other Necessary Expenses allowance (excluding payments for debts) for the debtor, the debtor's dependents, and, in a joint case, the debtor's spouse if not otherwise a dependent, in the area in which the debtor resides as determined <u>under the Internal Revenue Service financial analysis</u> for expenses in effect as of the date of the order for relief.
> .     .     .
> (39A)  monthly net income means the amount determined by taking the current monthly total income of the debtor less–
> (A) the expense allowances under the applicable National Standards, Local Standards and Other Necessary Expenses allowance (excluding payments for debts) for the debtor, the debtor's dependents, and, in a joint case, the debtor's spouse if not otherwise a dependent, in the area in which the debtor resides as determined <u>under the Internal Revenue Service financial analysis</u> for expenses in effect as of the date it is being determined.

H.R. 3150.RH 105th Cong. (1998)(emphasis added).  The provisions regarding the IRS financial analysis were deleted from the bill.  See H.R. 3150.EH 105th Cong. (1998).  The language pertaining to expense allowances went through a number of additional changes prior to becoming Section 707(b)(2)(A)(ii)(I) of BAPCPA.  The current section simply states that the debtor takes the applicable monthly expense amounts specified under the National Standards and Local Standards.  This Court could not find any legislative explanation for the change in the wording. However, the <u>Fowler</u> court contends and this Court agrees that "[t]he change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis

contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards."  In re Fowler, 349 B.R. at 419.

Additionally, in one of the prior versions of BAPCPA, Representative Hyde suggested an amendment to the means test to allow a more flexible approach in determining whether debtors could support a Chapter 13 plan.  145 Cong. Rec. H2718 (1999) (Statement of Rep. Hyde).  This amendment was rejected.  One of those strongly opposed to the proposed amendment was Representative Armey, who contended that legislation often provides courts with too much discretion.  Id. at 2719.  Representative Armey felt that by allowing the amendment the courts would once again be given too much discretion and participants would not know what to expect. Id.  Instead, Representative Armey asserted that "we must give everybody who would enter the courtroom under the jurisdiction of the law a clear understanding of what the law is and what are the rules of the game and what are the compliances [sic] required going into it."  Id.

Representative Armey's statement strongly supports the plain language argument that courts should use the amounts provided by the IRM and nothing else.  If debtors were expected to consult the IRM as a whole, then this would defeat the intent of the section, which was to provide a clear formula that a debtor could easily follow.  See In re Prince, 2006 WL 3501281, at *3 (asserting that "[t]o read section 707(b)(2)(A)(ii)(I) as permitting the courts to comb through the Internal Revenue Manual in order to pick and choose provisions to apply in a given case injects great uncertainty into the process of determining a debtor's expenses for purposes of the means test.").

### III. CONCLUSION

For the forgoing reasons, the Court concludes that the plain language of Section

13

707(b)(2)(A)(ii)(I) permits the Debtor to take the transportation-ownership allowance on her vehicle even though it is not encumbered or leased.  Since the Debtor's plan of reorganization complies with Section 1325 of the Bankruptcy Code, the Trustee's Objection will be overruled and the plan will be confirmed.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

IN RE:                          )
                                )
ALICIA GAYLE ENRIGHT            )        Case No. 06-10747
                                )        Chapter 13
          Debtor.              )
                                )

_____

### CERTIFICATE OF SERVICE

Alicia Gayle Enright
6801 Renwick Court
Greensboro, NC 27410-8378

Jeffrey P. Farran, Esq.
Suite 505 Summit Green
706 Green Valley Road
Greensboro, NC 27408

American Exp. Centurion Bank
c/o Becket & Lee, LLP
P.O. Box 3001
Malvern, PA 19355-0701

Bank Of America, NA
NC4-105-03-14
P.O. Box 26012
Greensboro, NC 27420-6012

Citicorp Credit Services
P.O. Box 20483
Kansas City, MO 64195-0483

First Point Resources
ATTN Managing Agent
P.O. Box 26140
Greensboro, NC 27402

Guilford County Tax Department
P.O. Box 3328
Greensboro, NC 27402

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Joe M. Lozano, Jr., Esq.
P.O. Box 829009
Dallas, TX 75382-9009

River Hills HOA
c/o Slatter Management Svcs, Inc.
P.O. Box 29447
Greensboro, NC 27429

15

Employment Security Commission
P.O. Box 26504
Raleigh, NC 27611-6504

Wells Fargo Bank, NA
c/o Wells Fargo Operation Center
7412 Jefferson Blvd. NE
Albuquerque, NM 87109
Wells Fargo Home Mortgage, Inc.
P.O. Box 10335
Des Moines, IA 50306-0335